**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTHERN DISTRICT OF NEW YORK**

HARPER INSURANCE LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED and GUILDHALL INSURANCE COMPANY LIMITED,

Petitioners,

vs.

CENTURY INDEMNITY COMPANY,

Respondent.

**CONFIDENTIAL MATERIALS**

Civil Action No. 10-CIV-7866 (NRB)

Hon. Naomi Reice Buchwald, U.S.D.J.

# PETITIONERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION TO VACATE ARBITRATION AWARD AND IN OPPOSITION TO RESPONDENT'S COUNTER-PETITION TO CONFIRM

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Federal Bar No. BO-7458

Attorneys for Petitioners, Harper Insurance Limited, River Thames Insurance Company Limited and Guildhall Insurance Company Limited

Of Counsel and on the Brief:
Brian E. O'Donnell
Caroline Brizzolara

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..... 1

LEGAL ARGUMENT ..... 2

I. THE CONVENTION AND THE FAA CONTROL ..... 2

A. LMC'S PETITION IS TIMELY UNDER THE CONVENTION AND THE FAA ..... 3

B. LMC'S PETITION IS ALSO TIMELY UNDER NEW YORK LAW ..... 4

II. THE FINAL ORDER EXCEEDS THE SCOPE OF THE PANEL'S AUTHORITY, AND MUST BE VACATED ..... 6

A. THE PANEL EXCEEDED ITS AUTHORITY BY DECIDING AN ISSUE NEITHER PARTY PRESENTED AND ENTERING RELIEF THAT NEITHER PARTY REQUESTED ..... 6

B. THE FINAL ORDER RE-WRITES MATERIAL TERMS OF THE PARTIES' CONTRACT ..... 7

C. THE FINAL ORDER IS NOT GROUNDED IN ANY RELEVANT COURSE OF DEALING ..... 8

D. THE CONVENTION AND THE FAA REQUIRE VACATUR OF THE FINAL ORDER, AND DISMISSAL OF CENTURY'S COUNTER-PETITION ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

### CASES

Banco de Seguros del Estado v. Mutual Marine Office, Inc., 230 F. Supp. 2d 362 (S.D.N.Y. 2002)....3

Barker v. Time Warner Cable, Inc., 897 N.Y.S.2d 668 (Supreme Ct., Nassau County 2009)....9

CRC, Inc. v. Computer Sciences Corp., No. 10 Civ. 4981, 2010 U.S. Dist. LEXIS 109562 (S.D.N.Y. Oct. 14, 2010)....1, 2

Collins & Aikman Floor Coverings Corp. v. Froehlich, 736 F. Supp. 480 (S.D.N.Y. 1990)....9

Gas Natural Approvisionamientos, SDG v. Atlantic LNG Co., No. 08 Civ. 1109, 2008 U.S. Dist. LEXIS 69632 (S.D.N.Y. Sept. 16, 2008)....6

Karlan Constr. Co. v. Burdick Assoc. Owners Corp., 560 N.Y.S.2d 480 (2d Dep't 1990)....5

MBNA Am. Bank, N.A. v. Nelson, 841 N.Y.S.2d 826, 2007 N.Y. Slip Op. 51200U (N.Y. Civ. Ct. 2007)....4, 10

MBNA Am. Bank, N.A. v. Straub, 12 Misc.3d 963, 815 N.Y.S.2d 450 (N.Y. Cty. Civ. Ct. 2006)....5

Michaels v. Mariform Shipping, S.A., 624 F.2d 411 (2d Cir. 1980)....3

N.Y. City Dist. Council of Carpenters Pension Fund v. Dafna Constr. Co., 438 F. Supp. 2d 238 (S.D.N.Y. 2006)....1, 5

PMA Cap. Ins. Co. v. Platinum Underwriters Bermuda, Ltd., No. 09-3963, 2010 U.S. App. LEXIS 23222 (3d Cir. Nov. 8, 2010)....9, 10

PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631 (E.D. Pa. 2009)....9

Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969 (2nd Cir. 1974)....6

Patten v. Signator Ins. Agency, Inc., 441 F.3d 230 (4th Cir.), cert. denied, 549 U.S. 975 (2006) .....9

Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd., No. 07 Civ. 10649, 2008 U.S. Dist. LEXIS 11793 (S.D.N.Y. Feb. 19, 2008) .....2, 3

Portfolio MGM, Inc. v. Allen, 2005 N.Y. Slip Op. 51774U (N.Y. Civ. Ct. Oct. 25, 2008).....5

Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174 (2d Cir. 1998).....3

Torrington Co. v. Metal Prods. Workers Union Local 1645, 362 F.2d 677 (2d Cir. 1966).....9

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29 (1987).....9

**STATUTES AND RULES**

9 U.S.C. §12.....1

9 U.S.C. §202.....2

9 U.S.C. § 208.....1, 2

N.Y.C.P.L.R. §7507.....4, 5

N.Y.C.P.L.R. §7510.....1

N.Y.C.P.L.R. §7511.....4

## PRELIMINARY STATEMENT

Century's opposition is clearly intended to distract this Court from the infirmities riddling the arbitration award (the "Final Order"). Century's limitations arguments are baseless, and the excuses it offers for the conduct of the arbitrators -- who impermissibly exceeded their authority by rewriting the parties' agreement and granting relief neither party requested -- ring hollow.

Contrary to Century's contention, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") and the Federal Arbitration Act ("FAA") govern LMCs' Petition to Vacate, not New York's procedural arbitration law. CRC, Inc. v. Computer Sciences Corp., No. 10 Civ. 4981 (HB), 2010 U.S. Dist. LEXIS 109562, **3-4 (S.D.N.Y. Oct. 14, 2010) (unless the parties' choice of law provision states that New York law shall govern both the agreement ***and its enforcement***, federal law applies to actions for vacatur). LMC's Petition is thus timely as it was served within the FAA's 3-month limitations period. 9 U.S.C. §§12, 208.

Further, even if New York's Civil Law and Practice Rules ("CPLR") applied, the Final Order was neither ***affirmed*** nor ***properly served*** on LMCs in accordance with CPLR §7507. As a result, LMCs' time to move for vacatur has not yet begun to run under the CPLR. Moreover, now that Century has counter-petitioned to confirm the Final Order, all limitations arguments fail because the CPLR permits a party to move for vacatur in opposition to a petition to confirm, ***even if the 90-day limitations period has expired.*** CPLR §7510; N.Y. City Dist. Council of Carpenters Pension Fund v. Dafna Constr. Co., 438 F. Supp. 2d 238, 240 (S.D.N.Y. 2006).

Once Century's limitations "sideshow" is exposed as a "red herring," it becomes clear that Century cannot possibly justify the panel's improper conduct. Century's "contract interpretation" argument directly contradicts the plain meaning of the contract it claims the panel construed, and its "course of dealing" argument relies on evidence that undermines the point it

attempts to make. Above all, Century has failed to rebut the fact that LMCs were denied due process since the Final Award decides an issue neither party presented to the panel, and provides relief that neither party requested. Vacatur is thus required.

## LEGAL ARGUMENT

### I. The Convention and the FAA Control

The instant dispute involves an arbitration award rendered in a dispute between a U.S. citizen and citizens of the United Kingdom. It is, therefore, controlled by the Convention.[1] 9 U.S.C. §202. Pursuant to 9 U.S.C. § 208, the FAA applies to relevant actions and proceedings, to the extent there is no conflict between the FAA and the Convention. Because the Convention does not contain a provision controlling the time frame within which a motion to vacate must be commenced, Section 12 of the FAA is applied in accordance with the "residual application" provision of the Convention. 9 U.S.C. § 208.

FAA Section 12, therefore, governs the timeliness of LMCs' Petition to Vacate. While the parties' arbitration agreement states that "the arbitration law of New York State shall govern [the parties'] arbitration," this language is insufficient to require the application of New York state arbitration law to post-award actions for enforcement or vacatur. CRC, Inc., 2010 U.S. Dist. LEXIS 109562, **3-4 (unless the choice of law provision in the arbitration agreement states that New York law shall govern both the agreement ***and its enforcement***, the FAA governs actions for vacatur); Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd., No. 07 Civ. 10649 (JGK), 2008 U.S. Dist. LEXIS 11793, **5-6 (S.D.N.Y. Feb. 19, 2008) ("'[i]n the absence of more critical language concerning enforcement" there is no intent "to modify the default rules

[1] Century admits as much in its Opposition Brief dated November 17, 2010 ("Opp. Brf.") at 13, fn. 15.

of the FAA."). LMCs' Petition, therefore, is governed by the FAA and the Convention, not the CPLR.

**A. LMC's Petition Is Timely Under The Convention And The FAA**

It is indisputable that LMCs' Petition was timely served under the FAA. The Final Order was e-mailed to LMCs on July 15, 2010 and LMC's Petition to Vacate was filed and served on October 14, 2010 -- within the 3-month period mandated by FAA §12 and, by extension, the Convention. As noted above, the Convention does not have its own provision controlling the time in which a party must bring a petition to vacate, and incorporates the FAA's provision in accordance with 9 U.S.C. §208.

Moreover, contrary to Century's contention, the date of the Interim Order is irrelevant because that ruling was an interlocutory one, not subject to review by the Court. Where arbitrators issue a ruling but retain jurisdiction to determine disputes arising out of that ruling, there is no final order capable of judicial review. See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998) (an award is only "final" when it "resolve[s] all the issues submitted to arbitration, and...resolve[s] them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication."); Michaels v. Mariform Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980) (district courts may not review interlocutory arbitration awards); Banco de Seguros del Estado v. Mutual Marine Office, Inc., 230 F. Supp. 2d 362, 368 (S.D.N.Y. 2002) (the FAA only permits federal courts to confirm or vacate arbitration awards that are final).

Here, the Interim Order required the parties to report back to the Panel within 45 days and expressly retained the Panel's jurisdiction "over the issues raised by the arbitration demand, including issues or controversies arising out of the Protocol." (Certification of Brian E.

O'Donnell dated October 14, 2010 ("O'Donnell Cert. I"), Exh. 13 at ¶6). Moreover, Century has admitted that the "Interim Order" was not a final order.[2] On the contrary, it was an interlocutory ruling that could not be confirmed by the Court. Thus, any argument that the FAA's 3-month limitations period began to run on December 10, 2006 is a sham.[3]

**B. LMC's Petition Is Also Timely Under New York Law**

Century argues that LMCs' Petition was untimely under CPLR Section 7511, but this argument has no merit. As explained above, the choice of law provision in the parties' contract is insufficient to warrant the application of New York arbitration law to LMCs' Petition. Nonetheless, even if Section 7511 were to apply, LMCs' Petition would be timely. Because the Final Order was never affirmed or delivered as required by CPLR Section 7507, the 90-day limitations period under Section 7511 was never even triggered. LMCs' Petition, therefore, was timely filed and served under the CPLR.

It is true that, under the CPLR, a petition to vacate an arbitration award must "be made by a party within ninety days after its delivery to him." CPLR §7511. The date of "delivery" of the "award" is thus the operative date for determining when the 90-day limitations period begins to run. But the terms "award" and "delivery" are defined terms under the CPLR. Section 7507 requires that "the award ***shall be*** in writing, signed and ***affirmed*** by the arbitrator making it...." CPLR §7507 (emphasis added). "Affirmation" requires "a declaration by the arbitrator attesting to the accuracy of the award under penalties of perjury." MBNA Am. Bank, N.A. v. Nelson, 841

---

[2] In its letter to the Panel dated June 1, 2010, Century argued for "***entry of a Final Order, in the form attached***, terminating jurisdiction but otherwise ***finalizing*** the December 10, 2006 Phase 1A Order and Protocol . . .." (O'Donnell Cert. I, Exh. 17) (emphasis added).

[3] Indeed, if the operative date is the date on which the Interim Order was issued, then Century's Counter-Petition to confirm must also be dismissed as untimely.

N.Y.S.2d 826, 2007 N.Y. Slip Op. 51200U, *9 (N.Y. Civ. Ct. 2007). The Final Order contains no such affirmation. (O'Donnell Cert. I, Exh. 20).

Section 7507 also states that, unless the parties have agreed otherwise, "[t]he arbitrator ***shall deliver*** a copy of the award to each party...***personally*** or ***by registered or certified mail,*** return receipt requested." CPLR §7507 (emphasis added). LMCs never entered into any agreement with Century regarding the method for delivery of an arbitration award. (See the Second Certification of Brian E. O'Donnell dated Dec. 22, 2010 ("O'Donnell Cert. II"), ¶4). The Panel never served LMCs or their counsel personally with a copy of an affirmed award, nor did the Panel deliver one to LMCs by registered or certified mail. (Id. at ¶5). The Panel simply e-mailed a .pdf of the Final Order to counsel. E-mailing an award that has never been affirmed does not satisfy the requirements of Section 7507. See MBNA Am. Bank, N.A. v. Straub, 12 Misc.3d 963, 971, 815 N.Y.S.2d 450, 457, n.7 (N.Y. Cty. Civ. Ct. 2006) (no "delivery" under the CPLR where "the award was served only by first class mail"); Portfolio MGM, Inc. v. Allen, 2005 N.Y. Slip Op. 51774U, * 2 (N.Y. Civ. Ct. Oct. 25, 2008) (dismissing a petition to confirm for lack of affirmation of the award). Because the events required to trigger the running of Section 7511's 90-day limitations period never occurred, that period has not run, even now. LMCs' Petition to vacate was thus timely filed under the CPLR.

Even if it were not, however, LMCs are now timely moving to vacate in response to Century's Counter-Petition. "[A] party may wait and make his arguments for vacating...the award in opposition to an application to confirm...even when that application to confirm is made beyond the 90-day period." Karlan Constr. Co. v. Burdick Assoc. Owners Corp., 560 N.Y.S.2d 480, 481 (2d Dep't 1990); Dafna Constr. Co., 438 F. Supp. 2d at 240 ("New York courts have interpreted CPLR §7510 as allowing the losing party to challenge an arbitrator's ruling when the

winning party moves to confirm, even if more than ninety days have elapsed."). LMCs' Petition is thus timely made in response to Century's Counter-Petition, even if the 90-day period under Section 7511 had expired, which it did not.

## II. The Final Order Exceeds The Scope Of The Panel's Authority, And Must Be Vacated

Regardless of the "great deference" that courts must generally give to the decisions of arbitrators, no deference is appropriate here. A Final Order that addresses an issue neither party presented, provides relief that neither party requested, and materially alters the terms of the parties' contract, exceeds the Panel's jurisdiction and must be vacated. Indeed, the Convention explicitly provides that:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked...if that party furnishes...proof that:
>
> * *
>
> (c) The award deals with ***a difference not contemplated by or not falling within the terms of the submission*** to arbitration, or it ***contains decisions on matters beyond the scope of the submission*** to arbitration...

(Convention, Art. V) (emphasis added).[4] That is exactly what happened here.

### A. The Panel Exceeded Its Authority By Deciding An Issue Neither Party Presented And Entering Relief That Neither Party Requested

It is true that Century asked the Panel to decide "how" and "when" LMCs are required to indemnify Century for losses under Treaty 101. What Century asked for, however, was an order

---

[4] Article V of the Convention "tracks in more detailed form" the grounds for vacatur set forth in FAA Section 10(a)(4). Gas Natural Approvisionamientos, SDG v. Atlantic LNG Co., No. 08 Civ. 1109 (DLC), 2008 U.S. Dist. LEXIS 69632, *12, n.7 (S.D.N.Y. Sept. 16, 2008) (citing Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 976 (2nd Cir. 1974)) ("Both provisions basically allow a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration."). The same reasons that require vacatur of the Final Order under Section 10(a)(4) of the FAA thus require non-enforcement under the Convention.

requiring LMCs to "pay ***or deny*** billings...within 75 days of receipt...." (O'Donnell Cert. I, Exh. 11, Protocol, ¶¶ 3-4). Century did not ask the Panel to determine whether LMCs must pay claims they deny under the contract, and did not ask the Panel to order such payments. By awarding such relief ***without hearing any evidence or testimony on it,*** the Panel violated due process, and deprived LMCs of their fundamental rights.

Argument submitted to the Panel in June 2010 does not cure the prejudice to LMCs. Century merely gave its stamp of approval to the 75% payment provision ***after*** the hearing. It did not submit the issue to the Panel at a time that would have permitted LMCs to mount a defense, put on witnesses, and receive a fair hearing. LMCs were thus prejudiced.

**B. The Final Order Re-Writes Material Terms Of The Parties' Contract**

Century claims that the Final Order merely "interprets" the terms of Treaty 101, to ensure LMCs' prompt payment of claims thereunder. But the Final Order does more than direct "when" and "how" LMCs must indemnify Century consistent with the Treaty terms. It also states "what" LMCs must indemnify Century for, over and above the obligations spelled out in the Treaty. The Final Order, therefore, does not merely "interpret" Treaty 101. It re-writes the terms of Treaty 101 by materially expanding LMCs' indemnification obligations.

Under the Final Order, in addition to paying "losses involving this reinsurance," LMCs must also pay 75% of claims they deny as outside the scope of the reinsurance. But Treaty 101 states conditions that must be met before LMCs have ***any*** obligation to pay ***one cent*** to Century:

- the loss ceded by Century ***must arise*** out of "an accident," as defined in Article IV;
- the "accident" ***must be covered*** by Century's underlying policy;
- that underlying policy ***must fall within*** a class of business identified in Article I;
- the amount of the loss ceded ***must exceed*** Century's retention under the Treaty; and
- the loss ***must not be excluded*** from coverage under Article III or any other relevant terms and conditions of Treaty 101.

These material terms were included in Treaty 101 to protect LMCs from having to pay claims that do not trigger their contractual obligations. The Final Order replaces these terms with one that neither party agreed or sought in the arbitration: it obligates LMCs to pay 75% of ***all*** losses billed by Century, even when:

- the loss ceded ***does not arise*** out of "an accident," as defined in Article IV;
- the "accident" ***is not*** covered by Century's underlying policy;
- that underlying policy ***does not*** fall within one of the identified classes of business;
- the amount of the loss ceded ***does not*** exceed Century's retention under the Treaty; and
- the loss ***is*** excluded from coverage under Article III or some other relevant contract term.

The Final Order thus does great violence to the parties' original agreement. A more offensive revision of contract terms is difficult to imagine.

**C. The Final Order Is Not Grounded In Any Relevant Course Of Dealing**

The parties' long-abandoned use of "Outstanding Cash Advances" or OCAs is irrelevant. As even Century recognized, the parties' historical use of OCAs was completely voluntary. Reinsurers under Treaty 101 had no contractual obligation to issue OCAs, and did not issue them to pre-fund losses that the reinsurers had denied.

Century's own witness admitted these facts. After admitting that her knowledge of the OCAs was entirely second-hand (O'Donnell Cert. II, Exh. B at 341:15-342:110), she testified that OCAs "were put up on a voluntary basis" in connection with particular claims, and that "there was not a contractual requirement to do that." (Id., Exh. A at 124:25- 125:8; Exh. B at 347:20-348:3). She also admitted that OCAs were not an automatic pre-funding mechanism for claims denied by the reinsurers, but were funds placed into a trust, which could not be withdrawn by Century without the express, advance permission of the reinsurers. (Id., Exh. A at 124:25 - 125:11; Exh. B at 345:8 - 13). The OCAs thus establish the converse of the point Century seeks to make: they prove that LMCs had no intent or contractual obligation, express or implied, to pay

Century for losses LMCs deny. Century's OCA "evidence" thus actually undermines its argument. It could not possibly have led the Panel to infer a contractual intent by LMCs to pay 75% of claims they deny under the Treaty.

**D. The Convention and the FAA Require Vacatur Of The Final Order, And Dismissal Of Century's Counter-Petition**

Under Article 5 of the Convention and Section 10(a)(4) of the FAA, arbitrators exceed their powers when they decide a matter not submitted to them, or ignore unambiguous contract language, or re-write a better contract for the parties than the one they wrote for themselves. The Third Circuit recently confirmed this rule in a case that Century tries to distinguish, in vain. PMA Cap. Ins. Co. v. Platinum Underwriters Bermuda, Ltd., No. 09-3963, 2010 U.S. App. LEXIS 23222, *6 (3d Cir. Nov. 8, 2010).[5] There, the Third Circuit affirmed the district court's decision[6] vacating an arbitration award for reasons remarkably similar to those at bar. Like the court below, the Third Circuit unequivocally held that arbitrators exceed the scope of their authority "by ordering unrequested relief and rewriting material terms of the contract they purport[ ] to implement." Id.

Century, however, tries to distinguish PMA Capital by arguing that the Panel "reasonably interpreted the payment obligation that was found in the contract" and "addressed the interplay of how and when payments were required in light of LMRs' audit rights and possible disputes regarding future claims." (Opp. Brf. at 22). This is drivel. As discussed above, in requiring

---

[5] See also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 236 (4th Cir.), cert. denied, 549 U.S. 975 (2006); Collins & Aikman Floor Coverings Corp. v. Froehlich, 736 F. Supp. 480, 484 (S.D.N.Y. 1990), abrogated on other grounds by Barker v. Time Warner Cable, Inc., 897 N.Y.S.2d 668 (Supreme Ct., Nassau County 2009) (quoting Torrington Co. v. Metal Prods. Workers Union Local 1645, 362 F.2d 677, 682 (2d Cir. 1966)).

[6] See PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631, 636-37 (E.D. Pa. 2009).

LMCs to pay 75% of claims they deny, the Final Order overrides the fundamental pre-conditions for payment set forth in Treaty 101. It imposes an entirely new payment obligation on LMCs, which has no source in the contract wording,[7] the parties' course of dealing, or the record. It is the product of a panel that overstepped the limits of its jurisdiction, and is thus subject to vacatur under Article 5 of the Convention, and Section 10(a)(4) of the FAA (as applied, pursuant to FAA Section 208, to disputes subject to the Convention).[8]

## CONCLUSION

For all of the foregoing reasons, and those set forth in LMCs' moving papers, LMCs respectfully request an Order vacating in its entirety the arbitration award rendered on July 15, 2010, and denying Century's Counter-Petition to Confirm in its entirety.

Respectfully submitted,

Date: December 22, 2010

By: ______________________
Brian E. O'Donnell

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Attorneys for Petitioners, Harper Insurance Limited, River Thames Insurance Company Limited and Guildhall Insurance Company Limited

4099612.1

---

7 Treaty 101's "honorable engagement" clause does not authorize the Panel to ignore Treaty terms. As the Third Circuit explains, "That the honorable engagement clause permitted the arbitrators to stray from judicial formalities did not give them authority to reinvent the contract before them, or to order relief no one requested." PMA Cap., 2010 U.S. App. LEXIS 23222, *6.

8 The Final Order is also ineligible for confirmation under the CPLR, if that statute were deemed to apply, which it does not. As discussed above, CPLR §7507 requires that the award first be affirmed by the Panel. See Nelson, 2007 N.Y. Slip Op. 51200U, *9. The Final Order, however, contains no such affirmation. (O'Donnell Cert. I, Exh. 20). Consequently, if CPLR Section 7510 were to apply, Century's Counter-Petition to confirm would have to be denied.